Please call the next case. 2230596 W.C. Mary C. Ryba, Appellant by Charles Cohn v. The Illinois Workers' Compensation Comm'n et al., Libertyville Manor Extended Care, Appalee by James Egan. Thank you. Mr. Cohn, you may proceed. Thank you, Your Honor. May it please the Court and Counsel, I am Charles Cohn on behalf of the Petitioner Mary Catherine Ryba. I apologize, I don't have the proper background. I attempted to make that right yesterday with the clerk, and while I was able to download the background... Listen, Cohn, just go to your argument. I'm not worried about your background. Okay. Thank you, Your Honor. Just continuing. This case, more than most, involves an issue of the standard of review. Usually, when I handle a case, I recite the standard of review, and it's not a real controversial issue in the case. That's not the case here. In this case, I believe that the Circuit Court Judge, Judge Baronis, pretty much ignored completely the standard of review recited by both sides and felt he had the discretion to reverse any decision he didn't like, and that's what he did here. In order for a case to be reversed at this level around review in the Circuit Court, there must be a finding that the commission decision was against the manifest weight of the evidence or that there was a finding or that the decision was an abuse of discretion by the arbitrator and the commission. No such findings were made by Judge Baronis. To the contrary, it was his decision which misstated the law. Mr. Cohn, on the issue of whether the commission appropriately reinstated the case, what standard of review is there other than abuse of discretion? I don't know if there would be one. Okay, then why did you mention manifest weight? Because this is an evidentiary finding. This isn't an interpretation of the statute. The arbitrator affirmed by the three order was not received. He accepted our argument that the dismissal was not received, and he based that combination of our representation to the arbitrator that the dismissal was not received and the unique circumstances of the time of the COVID situation. On the whole, he perceived that it was more reasonable than that that we didn't receive the dismissal, and then that was the reason why we did not move to reinstate in what would have customarily been a more timely fashion. Based on the language of the rule, 90-20-90.90a, the rule is not like Judge Baronis appeared to interpret it to be just a 60-day statute of limitations. You don't file for review in 60 days of the dismissal, you're dead. No, that is not the law on this one. Rather, it's 60 days from the date of receipt of the order of dismissal, and that 60 days is a matter of a finding of fact by the arbitrator and commission. Well, the arbitrator elected to make a finding agreeing or accepting our position that we didn't get the dismissal. Under 90-20... Counsel, you know, I know what the Talmadge case says, but in every case where it isn't filed within the 60 days, the only thing the attorney has to say is, I didn't get it. Yeah, that's what we did. And exactly how does your opponent prove that you did? It's a finding of fact. We said we didn't. He may not have had an ability to say we did, but the unique circumstances, maybe he would have, maybe under different circumstances, and for that matter, that was arbitrator Gloves thinking, had not there been a pandemic, he indicated he might have ruled in favor of the respondent and not reinstated. But there was a unique circumstance at the time. The commission completely stopped operating within this, what normally would have been 60 days of the date of the dismissal. So the arbitrator, as he explained in his decision, held that, accepted what we said, that there had not been, we had not received notice. That's the situation that we were faced with here. And one of the things with the decision of Judge Baronis was that he said, case law says that receipt of notice is established upon the date of mailing with confirmation of the sender. No, that's not the law. Colmage and Tabor and last year's more recent decision of Cass versus PayPal all say that in the event that the recipient denies receipt, it becomes an issue of fact. Well, that's what happened. We denied receipt, it became an issue of fact, and arbitrator Globe, affirmed by three commissioners, accepted the finding of fact based on the unique history of the time that the receipt did not occur and allowed the case to be reinstated. That's as he recognized the commission was completely shut down for 60 days within the 60 days after dismissal. And this was highly relevant to arbitrator Globe and was among the facts that led him to accept that receipt of the dismissal order by us did not occur. Also, he looked upon it also relevant to be considered that the respondent should have sent us a copy of the dismissal as well. And Mr. Egan conceded he never sent us a copy of the dismissal, whether or not that is or isn't relevant, it was relevant to arbitrator Globe. But I think the key thing, the important thing to him was we were dealing with a bad situation as the pandemic was coming down. We also have personal issues that are explained in the record. And as the Ferris case has indicated that for a decision to be against the manifest weight of the evidence, the opposite conclusion must be clearly apparent from the record. And we find that arbitrator's reasoning, which he spelled out in the record, was clear, logical, and given the unique circumstances of the pandemic situation we were facing at the time, also compassionate, which is consistent with the way that the act looks upon how it is supposed to function and how it is supposed to be interpreted. As indicated, there are two parts to Judge Baroness's ruling. The first was based on a rather erroneous reading of the law, trying to say that the sender is the sole actor when in fact it is an evidentiary weighing on receipt of the document. But the second paragraph is also kind of fuzzy and weak. He claims that the commission did not consider the arguments of a respondent, but only a petitioner. That just isn't so. Mr. Egan briefed why he felt that the case should not be reinstated. We argued it before arbitrator Globe on September 20th of 2021, the full argument, where I gave my piece and Mr. Egan gave his. And the arbitrator started to indicate that because of the pandemic, he was leaning toward reinstatement, which while he didn't say on the record, he did state it shortly thereafter and clearly stated it on the record when he had previously reinstated it. And then we held a full hearing on the merits, medical and witnesses and everything on December 27th of 2021. Mr. Cohn, you admit that you've had a full hearing on the merits. Did your opponent appeal that decision on the merits with both a exceptions before the commission and an argument before the circuit court? Yes, of course they did. They appealed the decision. More mainly, we didn't really argue that much. I did. I did make a I did made a cross review on just seeking. Then how can you request that if we agree that the circuit court should be reversed, that we should reinstate the award made by the commission? When it appears as if your opponent has never had a ruling on the appeal of those issues. I'm not sure I'm following because the commission had he took Mr. Egan did take full review before the commission and the commission considered everything. And yes. And did the circuit court consider everything or merely reverse based on a reversal of the reinstatement? Where did the circuit court rule on the merits of this case? The circuit court ruling is contained in the order of Judge Baronis. Where did the circuit court rule on the merits of this case is my question. By the merits of the case, Your Honor, are you referring to the nature and extent issues which were not really further taken up to the circuit court? It was only the reinstatement issue that was taken to the circuit court. I'm not following completely. I asked you what the issues were that were raised by your opponent both in the exceptions filed at the commission and in the argument before the circuit court. And you told me that it was on the merits. By the merits, I am referring to the issue regarding the reinstatement. They're claiming that arbitrator Glaub's reinstating. No, I understand that Mr. Cohen. I'm kind of lost. You don't understand my question evidently. Did your opponent argue before the circuit court relating to the merits of the award in favor of your client? I know he argued the reinstatement. I want to know if he argued the merits. No, that was not argued before Judge Baronis. We only argued the issue of the reinstatement and whether it was right or wrong. The issue of the nature and extent and those type things. No, that was not argued before Judge Baronis. I think that's what you're getting at. Yeah. And when they appealed from the commission's decision, were the merits of the case an issue in controversy? By the time we got before Judge Baronis, no. The merits as in nature and extent and those type of things were rising out, of course, and all those things. That was not in controversy. We just kind of let the decision of the commission and the arbitrator awarding benefits just be in the background and we were just, well, basically arguing that. You know what you were arguing. Don't you think they're entitled to a review by the circuit court of the merits of this case? Except they didn't bring such a review before Judge Baronis. They only argued on the point that they were saying that the commission and the arbitrator were wrong. Okay. They didn't argue the merits that were presented on the 27th of December. It was the argument before Baronis. What did they raise in their judicial review action? Did they raise the merits at all? No, not before Judge Baronis. To my recollection, they did not. They only were arguing that the commission was wrong to allow this to be reinstated. Okay. Okay. Just briefly concluding since I'm running out of time. They did have plenty of opportunity to oppose this reinstatement contrary to what Judge Baronis said in the second paragraph of his ruling. As I've stated, they briefed it. We argued it extensively on September 20th and I think to some extent also on the day we had the hearing on December 27th. The idea that Judge Baronis, what he said that we know that there was nothing in the record to support reinstatement only allegations. I'm not sure what it even means, but no. Mr. Egan had a full opportunity to say why he felt reinstatement shouldn't occur. Judge Arbitrator Glaub disagreed and reinstated. The commission affirmed and then Judge Baronis reversed. As I've indicated kind of in conclusion, the act is a humane law of remedial nature and given this unique circumstances of COVID crisis, Judge Arbitrator Glaub and the commission's acceptance of our claim we didn't receive notice and the fact that the commission essentially completely shut down within 60 days of when the case had been. Mr. Cohn, the red light is on. I guess you will have time to reply. Are there any further questions from the court? I do have one question. Mr. Cohn, are you suggesting based on the line of questioning that Justice Hoffman just presented to you with regard to the merits having never been heard at the circuit court level, are you suggesting then that your opponent has either waived or forfeited those arguments since they didn't bring them in their action before the circuit court? I think that would be a reasonable conclusion. Our fight essentially is on the reinstatement issue. There really wasn't a dispute after the commission level as to whether Arbitrator Glaub was right or wrong in his merits decision, only the argument with regard to the reinstatement issue. That's what we were arguing about before Judge Baronis, not anything regarding nature and extent, causal connection or anything like that. If we were to agree with you that the circuit court got it wrong on the reinstatement issue, are you suggesting then that the appellee is without recourse to argue about the merits at this point? Definitely, because to the extent that there was any discussion regarding the merits, it was briefed before the commission and Mr. Egan did not bring that issue before the circuit court of lethality. Thank you. No other questions? Mr. Egan, you may respond. If it pleases the court and counsel, James Egan on behalf of the appellee, Libertyville Manor Extended Care. A few things. First of all, the commission did not stop operating as of March 21st, 2020. They stopped conducting hearings and the courtrooms were closed. The commission itself was open for filing of motions and such, and the commission website was fully operational. So, one could track their cases if they wished to. The issue was raised in court that our office did not send a copy of the dismissal notices to counsel's office. We're under no duty to do so. In answering a question, I said I could not prove that we did. I wasn't handling the case at the time, but I conceded that I could not prove that we did send it to them, but we're under no duty to send copies of notices of dismissal out. Arbitrator Glob's decision, as well as the transcript, did not go into any great detail on the reinstatement, other than to say that counsel's office didn't receive the notice and COVID happened and they did not have to monitor redline cases anymore. I believe Arbitrator Glob's decision on his opinion that attorneys had no duty or responsibility to monitor their cases anymore was wrong. At all times, the entire petitioner's bar did have to monitor their cases. They weren't told they could ignore their cases. We were in status calls routinely for months with these cases coming up. Nothing in Arbitrator Glob's decision indicates why he's taking their word for it that they did not receive the notice. I'll concede, we'll concede that the mailbox rule is rebuttable, but I disagree in principle with the idea that you have an unlimited time frame thereafter to dismiss. Taking that argument to the extreme, the motion to reinstate could have been filed yesterday and counsel's office would have a pass on, or any attorney's office would have a pass on why they didn't file the motion to reinstate. This is a 400 and some odd day hiatus between the entry of the dismissal and the motion to reinstate. It was 436 days, yes, and in that time frame, first of all, if I was being asked what's a reasonable time to have filed for reinstatement, I'd say 60 days. However, if I'm going to give deference to the argument that they claim, their allegation that they did not receive the notice, at what point in time should they have seen the notice? Well, in May, there was not a status call. That would have been the first time this case was up, but I don't have the dates at the tip of my tongue. I believe it was August 14th, but I don't want to commit to that date, but three status calls passed, August, November, and then February, when had they been monitoring their case, they would have seen that it wasn't on the status call list and they could have inquired with the commission and going to their website would have seen that it had been dismissed. Um, the, um, so if you were asking what would have been a reasonable time frame for this motion to have been filed, I would have said, I would say 60 days after the first status call date, when they should have seen that their case was no longer appearing. And to be clear again, or I stated it numerous times in my briefs, and I have it written down numerous times on these pieces of paper in front of me right now, this case was dismissed a month prior to the courts being closed for COVID. Okay. So there was every opportunity to, um, to, um, to be in court in February, in February, nothing has been explained on why they, they weren't there on the date of the hearing. They haven't explained what happened on November when the case was set at the status call for hearing in February. And those are the things that arbitrator glob did not address in his petition and his, his decision. He merely based it on the feeling that, well, the petitioners bar didn't have to monitor the cases anymore. And I don't think any, I don't think he could have been any more wrong. I think that wasn't an abuse of discretion to just base his decision on the allegation that the, um, that the, notices were not received, um, in the motion to reinstate, it was alleged that they weren't even sent, which I think is an extreme position to take. We received the notices. We got them in the regular mail. Um, there's no allegation that their address was wrong in the notices. They admit they received notices from us that cases were being motioned for hearing. Um, and we've, and they admitted to getting a notice for a hearing date on February 18th of 2020. So there's all this was ignored in the decision of the arbitrator. And that's what we based our, um, that's what we're, we've based our appeal on was this case above the red line when it was just DWP. Yes. In March of the year of the DWP, uh, did the commission suspend the red line rule? They did. Um, I don't know if reinstated. I'm sorry. I cut you off the red line rule reinstated. I believe it was in 2021. I don't, uh, in the either in the fall of 2021, I believe I do not have that date in front of me. Okay. But the case was dismissed before the red line, uh, excuse me, before the courts were closed. I believe the red line was actually suspended when they reinstated the status calls in July. That's when the, um, the chairman said, we're going to relax the red line as, as a courtesy for people who might have difficulty attending status calls. They were initially in person, then they were suspended. The in-person was suspended and it went into, went over to Webex, uh, thereafter. Um, I think the second paragraph and judge Baroness is author order is very clear. I think it's succinct into the point. I think that, um, the arbitrator's decision does not consider all the evidence in the record against reinstatement. And I think the, um, Yeah. Failure to include that in the, um, in his decision, uh, was an abuse of discretion and shows that the, uh, extensive evidence we leading up to the dismissal in which we've our office filed five hearing requests over the course of the prior year. And then the case getting dismissed in February thereafter, all of this was ignored. And we feel that was, uh, very much an abuse of discretion. Um, no affidavit. Your statement of exceptions before the commission, what issues did you raise? We raised the reinstatement and then we did raise, um, the, uh, award. Yes. Okay. And, and then you raise that before the commission. Yes. Then you fi the, the, uh, you filed a action for judicial review of the commission's decision. Is that correct? Yes. And on what issues was your review base? The reinstatement. Only on the reinstatement? Yes, sir. So you raised no issues as to the merits? Correct. Yes. So have you waived any argument as to the merits by having not raised it if the case were to be reinstated? Yes. Okay. All right. If there's no further questions, um, I'll rest. Okay. Any questions from the court or the question? No. Okay. Thank you, Mr. Egan. Mr. Cohen, you may reply. Thank you. Uh, as we've mentioned throughout this case, the COVID-19 pandemic was central to, uh, arbitrator Glaub's thinking, which was affirmed by the commission panel, uh, that, uh, this changed the usual rules. Not withstanding. Well, Mr. Cohen, is, is it your contention that because of the pandemic, you can just totally ignore all your cases and wait 439 days after a DWP to have it reinstated? No, nobody was intending to ignore anything. Um, we didn't realize the case had been dismissed. And, uh, when we did, we promptly then discovered it and sought review. And one of the things was we denied, we got the decision. And I just didn't assume you didn't get the decision. Don't you have to check a case periodically? Isn't that a part of the job of a lawyer to check their cases? What did you think happened to this case? It just disappeared somewhere? I was not handling the case at that time, but I don't think anybody thought it disappeared. It was, that might've been a mistake, but it was a mistake when we were dealing with a weird, un, unique situation. And at this point in time, arbitrator Glaub considering the facts of our denial of the language of 90, 20, 90A, the fact of our denial and the fact that there was a, uh, a pandemic going on and the commission was not operating normally. As Respondents Council conceded, the red line was suspended on March 20th. And even on the date that we argued about the reinstatement on September, uh, I think it was September 20th of 2021. At that point in time, arbitrator Glaub mentioned on the record, this was the first time he, I think, had sat in Lake County uh, in a live hearing, uh, since the pandemic began. The commission was not functioning normal and the red line was not reinstated until the fall, sometime in the fall of 2021. My guess is that the red line was reinstated, uh, sometime between when we argued about the reinstatement in September and when we actually had the hearing on the merits in December, late December of 2021. And even I think arbitrator Glaub, I think even mentioned on the record at that time, it was still somewhat irregular to be appearing in person. Those are all background, interesting things, Mr. Cohn, but I think the issue is you don't have every case that's before the commission. You only have your cases before the commission, correct? Sure, obviously. And so do you, uh, have like a tickler file or ask yourself where are we on this case periodically? I mean, your only defense, it seems to me, is the defense that we were never noticed that it had been dismissed. Is that correct? That combined with the fact that there was no clear way even checking, we would have known that the case was gone. We didn't get noticed that the case was dismissed. And, uh, um, there was, I mean, there was no one at the commission. It was completely shut down, but there was no one at the commission that you could contact to say case number XYZ or letter XYZ, whatever. Okay. What is the status of that case before the commission? I don't know if there was or there wasn't. All I know was the commission was not operating in a normal, regular fashion as arbitrator Glaub clearly stated. We ourselves were not exactly operating in a normal situation as arbitrator Glaub said. That's really irrelevant. The issue is whether or not you have monitored your cases for over 400 days and you said we didn't get, have any reason to monitor our cases because we, I guess implicitly you're arguing we never got noticed that it had been dismissed. To the extent there was an oversight, it was, uh, I concede under the unique circumstances, we weren't functioning normally because of both the pandemic and the fact that my mother, my father. Okay. So you had these reasons, this rationale. Okay. The issue. And it was, and it was bought into by the arbitrator and reinstatement was had, is that correct? That's basically what this case is about. I wouldn't say bought in, but even the statement was had the arbitrator accepted our arguments. And at this point, this is a manifest way to the evidence argument. There wasn't even a finding that his decision was not against the manifest way. The evidence, the only thing that was against them, that the manifest weight attaches to is the, whether you actually received the notice and assuming that the arbitrator would, the finding that you didn't receive the notice should not be disturbed. The question still remains is having done nothing for 439 days was a reinstatement, uh, to seek reinstatement was an abuse of discretion, even in the face of the fact that you didn't get the notice. Looking at the four corners of the rule 90, 20.9 0 a, as I've argued, there's a 60 day period from the receipt. If we didn't receive it as the arbitrator found that 60 days does not begin to run whether or not we were as diligent as we should have been at this point, looking at the four corners of the rule and not going beyond it. Well, so then you, you agree with your, you agree with the assessment of your opponent that if the arbitrary, if the commission believes you didn't get the notice, then you could file a motion to reinstate five years after a DWP. Uh, that might be illogical, but at this point, why would that be illogical? Your argument taken to its extreme would mean exactly that. The problem. I'm sorry. The problem I have is the four corners of 90, 20, which only has a couple of sentences and talks about a 60 day period. And then if you don't get the notice, there is no 60 day period. And under your argument, you can move for reinstatement anytime you want. I didn't write rule 90, 20, 90. Uh, so I'm not, I'm kind of stuck. Uh, in some ways, well, the thing is we did move to reinstate when we discovered it, whether I think it's just a question of, uh, uh, that goes beyond the four corners of the rule. And at this point and beyond the fact that the pandemic was still in full force at the time, we did seek reinstatement in the spring of 21. So I think we really cannot disturb what the arbitrator Glaub and the commission said this was within their discretion. And it was, and you'd have to say that arbitrator Glaub was functioning against the manifest weight of the evidence and considering one, the pandemic and two, the four corners of the language of 20, 20, 90, 20, 90. Uh, I don't think that the, this court can fairly overturn what the commission did as judge Baroness did. I think that, and also as to his first, as to his first paragraph, there is no question that judge Baroness misstated the law regarding the mailbox rule. He misstated it completely. Uh, there was, it's an evidentiary decision of the arbitrator and commission and the, uh, and they rule one way. I don't think that any court, really it's within its discretion to, uh, to, uh, to say that what arbitrator, particularly given the pandemic, that what arbitrator Glaub and then affirmed by three commissioners, including the respondents commissioner said, uh, was wrong. I think that the circuit judge misstating the law, misstating the standard of review, uh, overturned arbitrator and three commissioners were in a situation that wasn't, wasn't right and was contrary to the law. I have no further questions. Okay. Any other from the court? No, no, hearing none. Uh, thank you counsel both for your arguments in this matter. Uh, this morning it will be taken under advisement, a written disposition shall issue. And at this time, the clerk of our court will escort you from our remote courtroom and we will proceed further. Thank you.